(No. 42218.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT LEE GUYTON, Appellant.

*Opinion filed November 30, 1972.*

GERALD W. GETTY, Public Defender, of Chicago (SHELVIN SINGER and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and TERENCE J. MAHONEY, Assistant State's Attorneys, and JOHN O'ROURKE (Senior Law Student), of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Robert Lee Guyton, was tried before a jury in the circuit court of Cook County and convicted of armed robbery. He was sentenced to not less than 3 nor more than 8 years in the penitentiary. This is an appeal from that conviction.

On February 4, 1967, at about 10 P.M., a taxicab

driver picked up two passengers, a man and a woman, at 43rd and Ellis streets in Chicago. The woman passenger paid her fare and left the cab at 48th and Champlain streets. The male passenger then told the driver to take him to 38th and Michigan. During the ride, the passenger carried on a conversation with the driver. When the cab stopped at a stop sign at 37th Place and Michigan Avenue, the defendant said, "This is a stickup." The driver turned around and observed the man with a gun. Upon demand, the driver gave his money, about $25, to the passenger who then left the cab and walked east on 37th Place. The driver drove around the block and a few minutes later at 37th Street and Indiana Avenue saw the man who had robbed him. When the driver spotted a police squad car, he stopped it and informed the officers of the robbery. He entered the squad car with the officers. They drove to 37th and Prairie where they parked the squad car and entered several establishments in that vicinity. As they were walking near 37th Street and Indiana Avenue, the cab driver saw the defendant step out of a doorway. He informed the officers that the defendant was the man who had robbed him and warned them that he had a gun. As the defendant reached for his hip pocket, the officers arrested him and removed a .22 caliber pistol from the pocket for which he was reaching. The arrest took place about 20 minutes after the robbery.

The defendant first contends that he was not proved guilty beyond a reasonable doubt. He urges that the cab driver did not have a sufficient opportunity to observe the passenger during the commission of the crime in order to formulate a positive identification. Although it was dark the driver stated that he had an opportunity to observe the passenger from time to time. At the time the passenger announced the holdup, the driver stated that another automobile was waiting behind the taxi at the stop sign with its headlights illuminating the interior of the taxi, permitting the driver to have a good view of the passenger

as he left the cab by the left rear door. When the driver stopped the police squad car, he described the robber to the officers as being a male Negro between the ages of 30 and 35, between 5 feet 7 inches and 5 feet 9 inches in height, weighing approximately 145 to 150 pounds, with hazel eyes and light brown skin color. He also told the officers that the man who had robbed him had a speech impediment and was wearing a green suede jacket, black hat, dark trousers and black overshoes. The officers testified that when the defendant was arrested he was wearing a green suede jacket, blue and white striped shirt, dark trousers, black hat and black shoes—more of a boot-type shoe. Both officers also testified that when they talked with the defendant after he was arrested, he had a speech impediment.

The defendant relies on cases wherein this court has stated that a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful or uncertain. (*People v. Cullotta, 32 Ill.2d 502; People v. Ikerd, 26 Ill.2d 573.*) However, in the case before this court the victim had a sufficient opportunity to observe the robber so that he was able to give a description of the robber's height and weight and to describe his unusual eyes. The eyes, he stated, were an outstanding physical feature. Another characteristic which he noted about the defendant as being outstanding was the speech impediment. He had also particularly noticed the robber's clothing.

All of these descriptive features of the robber had been given to the police prior to the defendant's arrest. When arrested, the defendant was wearing the clothing which the taxi driver had described, and the police officers noticed that he had a speech impediment. They testified that the defendant had hazel eyes which one officer stated "would appear amongst the Negro race as funny eyes." It is apparent that the witness had an adequate opportunity to observe the accused and retained the outstanding

identifying features. Here, as in *Ikerd,* the identification of the accused was not vague, doubtful or uncertain. Positive identification by one witness, who has ample opportunity for observation, may be sufficient to support a conviction. *People v. Mack, 25 Ill.2d 416, 421.*

At the trial the defendant showed that the cab driver had at a previous hearing made statements which varied from and were not entirely consistent with some of the testimony which he gave at the trial. Also, in giving the description to the police, the driver did not mention that the robber had a moustache, whereas a picture taken of the defendant after his arrest showed that he had a small moustache. In view of the other definite identifying features which the driver described to the police and which were possessed by the defendant, these matters of which the defendant now complains do not render the cab driver's testimony unworthy of belief. They were elements for the jury to consider in determining the weight to be given to the testimony. *People v. Jackson, 28 Ill.2d 566, 571; People v. Evans, 25 Ill.2d 194, 201.*

In an attempt to show that the defendant did not have a speech impediment, he took the stand and recited the words of a song. However, on cross-examination, he had difficulty in pronouncing some words which the prosecutor asked him to repeat. In any event, the members of the jury had the opportunity to observe and hear the witness, and could judge for themselves whether he had rebutted the testimony of the cab driver and the policeman concerning the speech impediment.

During cross-examination by defense counsel, one of the police officers who had arrested the defendant was questioned at length concerning the description of the robber which the cab driver had given to the officers. In the course of this questioning, the following exchange occurred:

"Q. You were the one that noted that Mr. Guyton had a speech impediment?

A. Yes, it's always in the crime pattern, too, that—.

The Court: That is not the question.

Q. There was a picture taken of Mr. Guyton, wasn't there?

A. Yes sir."

It is the defendant's contention that the statement, "Yes, it's always in the crime pattern, too, that" made it appear to the jury that the alleged crime was only one of many perpetrated by this defendant. At the time that this answer was given, defense counsel did not disavow the answer nor ask that it be stricken and the jury instructed to disregard it. On completion of the examination of this witness, the defendant, however, moved for a mistrial for this reason.

It is not clear as to what was meant by the comment of this witness. As the trial judge noted when he denied the motion for a mistrial, the matter was casually mentioned and was not tied to the defendant. The trial court had very wisely interrupted and stopped the witness from making any statement which might have indicated that the defendant was involved in other crimes.

We agree with the trial court that this statement did not have the effect of connecting the defendant with other crimes. The remarks made by the police officer on cross-examination did not deprive the defendant of a fair trial as he contends on this appeal.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*