THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. ROBERT JACKSON, Petitioner-Appellant.

First District (1st Division)   No. 85—2841

Opinion filed September 21, 1987.

574

William & Marcus, Ltd., of Chicago (James I. Marcus and John F. Dziedziak, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan Disis, and Kevin T. Byrne, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The petitioner, Robert Jackson, filed a petition in the circuit court of Cook County under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) and requested an evidentiary hearing on the following contentions: (1) the trial judge improperly found that he had waived his right to a jury trial without first determining whether he understood that right or the consequences of his waiver; (2) he had been denied his right to the effective assistance of counsel on appeal; and (3) the State had failed to prove him guilty beyond a reasonable doubt. The State moved to dismiss the petition, and, after hearing arguments of counsel, the circuit court dismissed the petition without conducting an evidentiary hearing. The petitioner appealed.

We affirm.

The petition and supporting exhibits contained the following factual allegations. The petition set forth that Jackson was charged in the circuit court of Cook County with murder and armed violence for the death of Rudolph Ortiz. The petitioner's mother, Elizabeth Jackson, according to her affidavit which was attached to the petition, retained attorney Isaiah Gant to represent the petitioner. Following a bench trial, Jackson was found guilty of murder and was sentenced to serve 20 years in the Illinois Department of Corrections. Thereafter, Elizabeth Jackson again retained Gant to appeal the petitioner's conviction. Also attached to the petition was a copy of a certified check payable to Gant in the amount of $1,000, which was alleged to be par-

tial payment of Gant's fee for the appeal. Gant filed a notice of appeal in the petitioner's case on January 18, 1982, he filed a docketing statement pursuant to Supreme Court Rule 606(g) (107 Ill. 2d R. 606(g)) on February 22, 1982, and he obtained an extension of time in which to file a brief on March 25, 1982. Elizabeth Jackson telephoned Gant several times during this period and each time, according to her affidavit, Gant had assured her that progress was being made in the petitioner's appeal. However, it appears that Gant took no further action with the petitioner's appeal after obtaining the extension on March 25. Following the failure to respond to this court's issuance of a rule to show cause why the petitioner's appeal should not be dismissed, the petitioner's appeal was dismissed for want of prosecution on July 9, 1982.

The petition alleged that he first learned that his appeal had been dismissed after his mother telephoned the appellate court clerk's office on July 11, 1984. Thereafter, Elizabeth Jackson retained another attorney, who filed a motion in this court to vacate its dismissal order of July 9 and, on October 9, 1984, this court denied the petitioner's motion. Petitioner's attorney then filed a motion in the supreme court for a supervisory order vacating the appellate court's dismissal order, and the supreme court denied that motion on December 18, 1984.

On April 12, 1985, Jackson filed the instant post-conviction petition in the circuit court. Initially, the petition was dismissed on June 13, 1985, but the dismissal order was vacated after the petitioner filed a motion for reconsideration, and a hearing was scheduled for September 16, 1985. On the day of the hearing, the State moved to dismiss the post-conviction petition, and, following arguments of counsel, the court granted the State's motion and again dismissed the petition. The petitioner now brings this appeal.

The initial issue presented by this appeal is whether the circuit court erred in dismissing Jackson's post-conviction petition alleging, *inter alia*, ineffective assistance of counsel without an evidentiary hearing on the factual allegations set forth in the petition and in his mother's affidavit, which was attached in support of the petition. For the reasons that follow we find that the circuit court properly dismissed the post-conviction petition without an evidentiary hearing.

■■■ An action brought under the Post-Conviction Hearing Act is not an appeal; rather, it is a collateral attack on a judgment of conviction. (*People v. James* (1986), 111 Ill. 2d 283, 489 N.E.2d 1350.) The purpose of such a proceeding is to resolve allegations that constitutional violations took place in the proceedings which resulted in the petitioner's conviction, when those allegations were not, or could not

have been, adjudicated previously. (See *People v. Silagy* (1987), 116 Ill. 2d 357, 507 N.E.2d 830; *People v. Harris* (1980), 91 Ill. App. 3d 376, 414 N.E.2d 911; Ill. Rev. Stat. 1985, ch. 38, par. 122—1.) The petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing as of right. (*People v. Silagy* (1987), 116 Ill. 2d 357, 507 N.E.2d 830; *People v. James* (1986), 111 Ill. 2d 283, 489 N.E.2d 1350.) Summary dismissal of a nonmeritorious petition without an evidentiary hearing is permitted under the Post-Conviction Hearing Act. (*People v. James* (1986), 111 Ill. 2d 283, 489 N.E.2d 1350.) The denial of post-conviction relief based upon a claim of ineffective assistance of counsel will be upheld unless it is manifestly erroneous. *People v. Rogers* (1986), 147 Ill. App. 3d 1, 5, 497 N.E.2d 856, 858.

█ In order to survive a threshold determination of merit, a post-conviction petition must set forth facts that demonstrate a denial of constitutional rights. (*People v. Garvin* (1987), 152 Ill. App. 3d 438, 504 N.E.2d 948.) The petitioner's first claim here is that the trial court improperly determined that he waived his right to a jury trial without first determining whether he knowingly and intelligently waived that right. This claim centers on the following colloquy, which took place prior to the petitioner's trial:

"THE COURT: Let the record show we have Mr. Jackson before us now. Mr. Gant is here and the State's Attorney Mark Rakoczy is here.

As I understand, Mr. Gant you are ready for trial at this time?

MR. GANT: I am, your Honor.

THE COURT: And this will be a bench or jury?

MR. GANT: A bench.

THE COURT: Mr. Jackson, I was present and observed you signing this jury waiver. Do you know what a jury is Mr. Jackson?

A. [Petitioner] Yes.

Q. [The Court] Do you know that by signing this jury waiver, you are advising me you *do not* want a jury trial and you *do not* [*sic*] want me to do two things; first, determine what the law is in this case and listen to your evidence and determine whether you are guilty or innocent, is that correct?

A. [Petitioner] Yes, sir.

THE COURT: Let the record show that in my opinion Robert Jackson has knowingly and intelligently waived his right to trial by jury. Have a seat and we will begin." (Emphasis added.)

According to the petitioner, because the trial judge misspoke, the trial court's inquiry was confusing and his response, therefore, cannot be considered a knowing and intelligent waiver of his right to a jury trial. In addition to the alleged ambiguous inquiry, the petitioner claims that the trial court failed to explain all the factors required in *United States v. Delgado* (7th Cir. 1981), 635 F.2d 889, before finding that he waived his right to a jury. Accordingly, he argues that the questioning here by the court was insufficient to adequately determine whether the petitioner understood his right to a jury trial or the consequences of his waiver of that right. Thus, the petitioner concludes that the trial court improperly dismissed his post-conviction petition without conducting an evidentiary hearing on this issue, *i.e.*, whether he effectively waived his right to a jury trial.

The State admits that the transcript of proceedings indicates an ambiguity concerning the petitioner's right to a jury trial in the trial judge's questions to the petitioner. However, the State contends that the ambiguous statement was not made until after the petitioner had signed a jury waiver form and acknowledged to the court that he understood what a jury was and, hence, what he was waiving by his action. The State further argues that the petitioner was present in court and did not object when his attorney informed the court that the petitioner wanted a bench trial. Thus, the State argues that the petitioner is bound by his attorney's waiver and cites *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762, and *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397, in support of its argument. Finally, the State also directs this court's attention to the petitioner's failure to allege in his post-conviction petition or in an affidavit that he, in fact, wanted a jury trial, that he was somehow confused when the petitioner signed the jury waiver form in open court, or that he was confused during the proceedings when his attorney, in his presence, informed the court that petitioner was requesting a bench trial. Consequently, the State contends that the record, when considered as a whole, demonstrates that the proceedings were proper and that the petitioner's jury waiver was valid and, thus, that the petitioner's claim is clearly without merit.

■■ ■ Section 103—6 of the Code of Criminal Procedure of 1963 states:

> "Every person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court." (Ill. Rev. Stat. 1985, ch. 38, par. 103—6.)

The determination of whether a jury waiver was effective, *i.e.*, whether the accused knowingly and understandingly waived his right

to a jury trial, is based upon the facts and circumstances of each particular case and not upon the application of any set formula. (*People v. Frey* (1984), 103 Ill. 2d 327, 469 N.E.2d 195; *People v. Turner* (1986), 145 Ill. App. 3d 446, 495 N.E.2d 1056.) Furthermore, Illinois adheres to the principle that an accused who permits his attorney to waive his right to a jury trial, in his presence and without objection, is deemed to have acquiesced in, and is bound by, his attorney's action. See *People v. Smith* (1985), 106 Ill. 2d 327, 478 N.E.2d 357; *People v. Murrell* (1975), 60 Ill. 2d 287, 290, 326 N.E.2d 762, 764; *People v. Sailor* (1969), 43 Ill. 2d 256, 260, 253 N.E.2d 397, 399; *People v. Turner* (1986), 145 Ill. App. 3d 446, 495 N.E.2d 1056; *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 466 N.E.2d 250, *appeal denied* (1984), 101 Ill. 2d 584.

The defendant in *People v. Turner* (1986), 145 Ill. App. 3d 446, 495 N.E.2d 1056, claimed, as the petitioner does here, that the trial court erroneously ruled that he had waived his right to a jury trial, without taking the proper procedural safeguards to insure that his waiver was an informed choice. In that case, defense counsel also responded affirmatively when the trial court asked whether the defendant's right to a jury trial had been waived. In that appeal our court rejected the defendant's claim and found that the defendant's attorney had effectively waived the defendant's right to a jury trial, had done so in open court and in the presence of the defendant, who, by not voicing an objection, had acquiesced in the waiver.

■ Similarly, the defendants in *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 466 N.E.2d 250, *appeal denied* (1984), 101 Ill. 2d 584, argued that their written jury waivers could not be regarded as understanding and knowing waivers, because the records in their respective cases failed to affirmatively show that their right to a jury trial had been explained to them. The court in *Kilfoy* rejected the defendants' claims since the records in each case contained their written jury waivers and the transcript of proceedings demonstrated that each defendant was present in court, and the defendants did not object when their respective counsel waived their right to a jury trial. It appears that an important consideration in the court's decision in that case was that neither defendant had claimed in his post-conviction petition that his jury waiver was involuntary, that he wanted or was deprived of a jury trial, or that he was in any way prejudiced by counsel's waiver on his behalf.

Similarly, in the case before this court, the petitioner was present in court when his attorney informed the court that the petitioner wanted a bench trial, and the petitioner voiced no objection at that

time. While the record in this case does not contain a signed jury waiver, as did the record in *Kilfoy*, the transcript of proceedings does indicate that the petitioner signed a jury waiver in open court, and the petitioner does not challenge the accuracy of the transcript. Additionally, the petitioner here, in fact, told the trial court that he knew what a jury was, and the judge noted on the record that he had seen the petitioner execute a waiver of that right. Accordingly, we believe that the record amply demonstrates that an effective jury waiver was made in this case. Thus, the petitioner here did not establish a denial of his constitutional right to a jury trial in his post-conviction petition.

The petitioner's reliance on *United States v. Delgado* (7th Cir. 1981), 635 F.2d 889, is misplaced. The defendant's conviction in *Delgado* was reversed because the trial court there failed to comply with the Seventh. Circuit's supervisory rule governing acceptance of jury waivers. However, that supervisory rule is not binding on this court or the circuit court of Cook County. Illinois courts have indicated a preference for the procedure recommended by the American Bar Association for accepting jury waivers (see *People v. Murrell* (1975), 60 Ill. 2d 287, 291, 326 N.E.2d 762, 764-65; see *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 466 N.E.2d 250, *appeal denied* (1984), 101 Ill. 2d 584), which provides:

"The trial court should not accept a [jury] waiver unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record." (ABA Standards, Trial by Jury sec. 1.2(b) (1968).)

However, our courts have noted that this preferred procedure is not constitutionally required, nor has it been mandated by statute or supreme court rule. *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762; *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 466 N.E.2d 250, *appeal denied* (1984), 101 Ill. 2d 584.

We also find it significant here that the petitioner failed to claim in his post-conviction petition that his waiver was involuntary, that he somehow wanted or was deprived of a jury trial, or that he was prejudiced in any way by his attorney's waiver on his behalf. Under these circumstances, we conclude that the trial court properly refused to conduct an evidentiary hearing on the issue of the effectiveness of the petitioner's jury waiver.

■ Next, the petitioner claims that he was denied the effective assistance of counsel on appeal. This, he asserts, is an issue of constitutional dimension which is cognizable in a post-conviction proceeding and cites *People v. Perez* (1983), 115 Ill. App. 3d 446, 450 N.E.2d 870,

in support of that claim. He contends that his attorney's failure to perfect his appeal after being retained to do so violated his right to counsel on appeal, and that that right is guaranteed by our constitution. (See U.S. Const., amends. VI, XIV; *Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830.) Petitioner admits, however, that under the standard established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, as adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, ineffective assistance of counsel due to an attorney's deficient performance does not warrant reversal unless actual prejudice is shown. However, he asserts that actual prejudice need not be shown here since he was denied all assistance of counsel on appeal and, hence, he argues, prejudice must be presumed under *Strickland* inasmuch as there was a total denial of assistance of counsel. The petitioner further asserts that, in any event, the record demonstrates actual prejudice because he has been precluded from raising issues he could have raised on a direct appeal, which he is now unable to raise because of Gant's neglect, which caused his appeal which, as stated, was a matter of right, to be dismissed. See Ill. Const. 1970, art. VI, sec. 6.

The State, on the other hand, contends that the trial court properly found that the petitioner failed to satisfy the *Strickland* test. The State argues that the contentions that petitioner would have asserted in his direct appeal, to wit, ineffective jury waiver and insufficient proof of guilt, are patently without merit, and that, therefore, his attorney's failure to prosecute petitioner's appeal did not result in any prejudice to the petitioner. Thus, the State asserts that the trial court properly dismissed the post-conviction petition without an evidentiary hearing, citing *People v. Edgeworth* (1975), 30 Ill. App. 3d 289, 332 N.E.2d 716, in support of this contention.

In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court established a two-pronged test for determining whether a criminal defendant has been denied effective assistance of counsel and whether such denial requires reversal of his conviction: (1) the accused must show that counsel's representation fell below an objective standard of reasonableness, and (2) the accused must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693-94, 697-98, 104 S. Ct. 2052, 2064-65, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473

N.E.2d 1246, 1255-56, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061; *People v. Pegram* (1987), 152 Ill. App. 3d 656, 504 N.E.2d 958.

▅▅▅▅ The right to the effective assistance of counsel also applies to appeals when those appeals are a matter of right. In *Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830, the United States Supreme Court held that the due process clause of the fourteenth amendment guarantees a criminal defendant effective assistance of counsel on appeal when that appeal is one of right. 469 U.S. 387, 395-400, 83 L. Ed. 2d 821, 829-33, 105 S. Ct. 830, 836-38; see *People v. Scott* (1986), 143 Ill. App. 3d 540, 493 N.E.2d 27.

In this case, the trial judge at the post-conviction proceeding applied the *Strickland* test and found that the petitioner had failed to demonstrate any probability that he would have prevailed on the issues he claims he would have raised in his direct appeal. This standard has previously been applied where the defendant claimed, as Jackson claims here, that he had been denied his right to the effective assistance of counsel on appeal. (See *People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072, *appeal denied* (1987), 116 Ill. 2d 574; accord *Gray v. Greer* (7th Cir. 1985), 800 F. 2d 644; *Downs v. Wainwright* (Fla. 1985), 476 So. 2d 654; but *cf. United States ex rel. Thomas v. O'Leary* (N.D. Ill. Aug. 17, 1987), No. 86—L—5546 (memorandum opinion applying *Strickland* test but finding constitutional violation).) In *People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072, the trial court denied the defendant's petition for post-conviction relief, in which he claimed he had received ineffective assistance of counsel on appeal because his attorney failed to perfect his appeal. On appeal, the court in *Weger* found that the record there established that the defendant had intended to appeal, that his attorney had indicated that he would perfect the appeal, but failed to do so. The court in *Weger* then noted that an attorney's failure to perfect an appeal when directed to do so would fall below the objective standard of reasonable representation and, accordingly, satisfied the first prong of *Strickland*. The court there next considered the defendant's arguments that he would have raised on a direct appeal to determine whether the defendant had been prejudiced by counsel's deficient performance. The *Weger* court found that he would not have been successful and, thus, had not been prejudiced.

Likewise, in this case, taking the petitioner's allegations as true, we agree with the trial court's finding that Gant's representation fell below the objective standard of reasonableness and satisfied the first prong of the *Strickland* standard. Next, as the trial court did below

and the court did in *Weger*, we consider the petitioner's arguments, which he claims would have been raised on his direct appeal, to determine whether he has shown the existence of a reasonable probability that, but for Gant's deficient representation, the result would have been different, *i.e.*, whether Jackson was prejudiced by the ineffective representation.

The first issue that the petitioner claims he would have raised in his direct appeal was that the trial court failed to employ proper procedural safeguards before determining that he had effectively waived his right to a jury trial. However, as noted above, we have already determined that the petitioner's waiver was, in fact, effective. Thus, this issue could not have resulted in reversal of the petitioner's conviction.

The other issue the petitioner claims he would have raised in his appeal is that the State failed to prove him guilty of murder beyond a reasonable doubt.[1] The petitioner bases this claim on the fact that one of the State's eyewitnesses, James Collins, could not positively identify him in court as the assailant. He claims that Collins' testimony was the sole evidence of the State which the trial court relied upon to find him guilty of murder and Collins was the only relevant witness to the petitioner's claim that he stabbed the victim in self-defense. The petitioner thus contends, it appears, that because the witness could not positively identify him at trial as the assailant, the State did not sustain its burden of proving beyond a reasonable doubt that he committed murder or that he did not act in self-defense. The petitioner cites *People v. Guyton* (1972), 53 Ill. 2d 114, 290 N.E.2d 209, *People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651, and *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232, and alleges they are similar to his case and supportive of his claim.

The testimony of James Collins showed that he was an eyewitness to the street fight on the evening of December 12, 1980, at Van Buren and Federal in Chicago, Illinois, the fight in which the petitioner allegedly murdered the victim, Rudolph Ortiz. James Collins described the events he observed. He testified that he saw a black man chase a white man east on Van Buren, that the black man caught up to the white man and knocked him to the ground, and that the black

---

[1]We note that issues regarding the sufficiency of evidence are not proper in post-conviction proceedings, which are limited to a determination of whether a defendant was denied constitutional rights (*People v. Shaw* (1971), 49 Ill. 2d 309, 311, 273 N.E.2d 816, 817), but such evidentiary issues are cognizable in this instance for the limited purpose of determining whether appellate counsel's failure to raise it on direct appeal constituted incompetence of counsel (*People v. Edgeworth* (1975), 30 Ill. App. 3d 289, 298, 332 N.E.2d 716, 723).

man then began to stab the white man. However, James Collins was unsure at trial whether the petitioner was the assailant he had seen on Van Buren. He explained that the petitioner's appearance was different at trial. He stated that the petitioner was thinner, that he wore a different hair style and that he was dressed differently.

The petitioner's argument ignores the fact that the State had presented the testimony of another eyewitness who identified the petitioner in court as the assailant. Robert Collins, who was unrelated to James Collins, also testified for the State. Robert Collins stated that he was working as a security guard at a bank and that he observed the fight from a second-floor window. He said he saw a black man straddling another man, who was lying on the street, and that the black man was hitting the other man with an object that appeared to be a knife. Later, Robert Collins stated that he also ran onto the street and saw the man who had hit the other man wiping off a knife. Robert Collins identified the petitioner in court as that man. Furthermore, the petitioner himself took the stand and testified in his own behalf. The petitioner admitted that he stabbed the victim numerous times but did so only because he believed the victim was attempting to take a weapon out of his pocket.

It would thus appear that the petitioner's argument is that all of James Collins' testimony must be rendered unreliable merely because Collins failed to identify him in court as the assailant, and, thus, the petitioner's version of events, including his claim of self-defense, must be accepted. However, since the State's evidence identifying the petitioner as the assailant was actually uncontradicted, the failure of James Collins to positively identify the petitioner in court as the assailant was in no way fatal to the State's case. The failure of a witness to make a positive identification in court does not render that testimony inadmissible (People v. Kubat (1983), 94 Ill. 2d 437, 475, 447 N.E.2d 247, 263, cert. denied (1983), 464 U.S. 865, 78 L. Ed. 2d 174, 104 S. Ct. 199) but goes only to the weight the trier of fact will give the evidence. (People v. Cowherd (1980), 80 Ill. App. 3d 346, 399 N.E.2d 672; People v. Franklin (1979), 73 Ill. App. 3d 558, 392 N.E.2d 408.) Furthermore, the trial court stated that it did not believe the petitioner, found his testimony to be inconsistent with the testimony of James Collins and Robert Collins and other evidence and, accordingly, not credible. Specifically, the court noted that the direction of two of the victim's nine stab wounds was inconsistent with the petitioner's version of the fight, but was consistent with the testimony of the State's eyewitnesses. The trial judge further found that the petitioner's credibility had been damaged by his prior inconsistent

statements. The petitioner had told police officers at the scene and at the station that he had seen the victim with a gun. However, the petitioner testified at trial that he never saw a weapon and that he never told the police that he had seen a gun. The trial judge stated in his findings that he believed that the petitioner had changed his story because no gun was found after a search of the victim and the scene.

██ It is the function of the trial judge, as the trier of fact, to determine the credibility of witnesses, the weight to be accorded their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) It is entirely proper for the trial court to resolve these discrepancies against the petitioner and in favor of the State. Accordingly, we find that, based on the record here, the petitioner has also failed to demonstrate a reasonable likelihood that this issue, if it had been raised on a direct appeal, would have resulted in reversal.

Additionally, we find the cases cited by the petitioner in support of his claim are unpersuasive. In *People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651, the defendant's voluntary manslaughter conviction was reversed because the State's case, based solely on circumstantial evidence, did not clearly show that the victim's death was caused by the struggle with the defendant. The defendant in *Lewellen* admitted at trial that she had hit the victim with a stick during a fight in self-defense, but that it was only after the fight had ended that the victim had fallen and struck his head on the bathtub. In the present case, the State's case is not based on circumstantial evidence. The evidence clearly demonstrated that the victim died as a result of multiple stab wounds which the petitioner himself admitted he inflicted. Also, in both *People v. Guyton* (1972), 53 Ill. 2d 114, 290 N.E.2d 209, and *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232, cited by the petitioner, the identity of the perpetrator was in issue. Here, as stated, the petitioner admitted at trial that he had stabbed the victim, and he was also identified as the assailant by Robert Collins.

██ Finally, the petitioner also claims that the circuit court was statutorily obligated to redocket his post-conviction petition for further consideration since the circuit court failed to enter an order within 30 days of the filing and docketing of the petition (see Ill. Rev. Stat. 1985, ch. 38, par. 122—2.1). As this court recently recognized in *People v. Garvin* (1987), 152 Ill. App. 3d 438, 442, 504 N.E.2d 948, 951, the failure of the circuit court to act on a petition within 30 days of its filing and docketing does not warrant reversal unless the delay prejudiced the petitioner. Here, the court initially dismissed the post-

conviction petition more than 30 days after it had been filed and docketed, but, subsequently, the court vacated that dismissal order and set a date for a hearing on the petition. At that hearing, the petitioner was permitted to fully argue the merits of all his claims before the court dismissed the petition. Under these circumstances, we do not find that the petitioner was prejudiced in any way by the delay in this case.

Accordingly, for the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMBPELL and MANNING, JJ., concur.